**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-00406-01-CR-W-RK |
| ) | |
| KAMEL MAHGUB ELBURKI, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending are Defendant Kamel Mahgub Elburki's Motion for Leave of Court to File Out of Time, His Second Motion Under Rule 12 of the Federal Rules of Criminal Procedure, Motion to Dismiss to Dismiss [sic] All Indictments (Doc. 907) and Second Motion to Dismiss All Indictments for Denial of His Right to Counsel of Choice (Doc. 908). On June 4, 2024, Government counsel filed its Response to Defendant's motions. Doc. 912. Defendant did not file a reply to either motion, and the time for doing so has passed. L.R. 7(c)(3). For the reasons set forth below, it is recommended that Defendant's motions be **DENIED**.

### I.    BACKGROUND

On December 12, 2019, the grand jury returned an indictment charging Defendant Kamel Mahgub Elburki with conspiracy to distribute 500 grams or more of methamphetamine and one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i)-(ii), and (h); carrying, possessing, using, brandishing, and discharging firearms in furtherance of drug trafficking offenses in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii); being a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and possession with intent to distribute 500 grams or more of methamphetamine and one kilogram or more of heroin in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 1.[1] Upon Defendant's request, the Court appointed CJA counsel, Chase Higinbotham, to represent him. Docs. 30-31. Mr. Higinbotham represented Defendant from December 2019 until August 2020. Docs. 31, 132. At that time, Lacon Smith entered her appearance as retained counsel for Defendant. Doc. 131.[2] On September 30, 2020, the grand jury returned a superseding indictment charging Defendant with the same crimes set forth in the first indictment. Doc. 144.[3]

In January 2021, the Court issued a Scheduling, Trial, and Continuance Order setting a pretrial motion deadline of June 4, 2021. Doc. 273 at 5. On May 26, 2021, Ms. Smith moved to withdraw as Defendant's counsel. Doc. 334. On June 3, 2021, the day before the pretrial motion deadline, Ms. Smith also moved for an extension of time to file pretrial motions. Doc. 339. After conducting two hearings, the Court granted Ms. Smith's motion to withdraw as counsel and reappointed Mr. Higinbotham to represent Defendant as CJA counsel. Docs. 349, 360-61. The Court also continued the pretrial motion deadline to August 16, 2021, for Defendant Elburki only. Docs. 360, 362. In September 2021, Mr. Higinbotham requested an out-of-time extension of the pretrial motion deadline to December 15, 2021. Doc. 410. The Court granted his request and set a new pretrial motion deadline of December 15, 2021. Doc. 411.

On December 15, 2021, Defendant timely filed a motion to suppress and a motion for reconsideration of detention. Docs. 439-40. At that time, he did not file a motion to dismiss the indictment based on claims of grand jury misconduct, nor claims related to the alleged deprivation of his right to choice of counsel. Roughly one year later, on December 10, 2022, Mr. Higinbotham

---

[1] The indictment also charged ten other defendants in this matter. Doc. 1.

[2] Lacon Smith's written entry of appearance identifies Springfield as the location of her law firm. Doc. 131 at 1.

[3] The superseding indictment charged eight additional defendants in this matter. Doc. 144.

filed an untimely motion to dismiss (hereinafter, "First Motion to Dismiss"). Doc. 591.[4] The undersigned denied the First Motion to Dismiss without prejudice as it was filed untimely and without being granted leave to do so. Doc. 593. Six days later, Defendant filed a motion for extension of time to file pretrial motions. Doc. 599. The Court denied Defendant's motion to extend the pretrial motion deadline, finding Defendant did not establish good cause. Doc. 615.

On December 22, 2022, Defendant filed a Motion Under Rule 12 of the Federal Rules of Criminal Procedure seeking leave to file the First Motion to Dismiss. Doc. 617. Although not attached to his motion for leave, counsel referenced his First Motion to Dismiss (Doc. 591) that was previously denied without prejudice. *Id*. at 1, 3-4 (citing Doc. 591). Therein, Defendant alleged "grand jury misconduct based upon a review of the three (3) grand jury transcripts in the instant case." *Id*. at 4 (citing Doc. 591).[5] In essence, Defendant alleged that certain witnesses provided false or inaccurate testimony before the grand jury. Doc. 591 at 4-5. The Government opposed Defendant's motion. *See* Doc. 628.

On May 1, 2023, the undersigned issued a report recommending the District Court deny Defendant's request for leave to file his First Motion to Dismiss out of time (Doc. 617). Doc. 736. The undersigned recommended the District Court find Defendant "failed to show good cause to grant leave to file an untimely motion to dismiss." *Id*. at 3, 5.[6] On September 7, 2023, District Court Judge Roseann A. Ketchmark adopted the undersigned's report and recommendation (Doc.

---

[4] On December 1, 2022, Defendant filed a pro se motion to dismiss. Doc. 587. That motion was denied without prejudice pursuant to the Court's Scheduling, Trial, and Continuance Order, which provides that pro se motions will not be accepted by defendants who are represented by counsel. Doc. 595 (citing Doc. 273 at 5).

[5] Defendant did not raise any arguments or claims related to an alleged deprivation of the right to choice of counsel in his First Motion to Dismiss (Doc. 591), nor in his Motion Under Rule 12 Federal Rules of Criminal Procedure seeking leave to file the First Motion to Dismiss (Doc. 617).

[6] The undersigned also recommended that if the District Court found Defendant established cause, his motion for leave to file an untimely motion to dismiss should be denied because he did not demonstrate prejudice. Doc. 736 at 5.

736) in full and denied Defendant's motion for leave to file his motion to dismiss out of time. Doc. 840.[7]

On March 18, 2024, John Picerno entered his appearance as retained counsel for Defendant. Doc. 875. On May 21, 2024, Defendant filed the pending Motion for Leave of Court to File Out of Time, His Second Motion Under Rule 12 Federal Rules of Criminal Procedure, Motion to Dismiss to Dismiss [sic] All Indictments (hereinafter, "Motion for Leave"). Doc. 907. In the Motion for Leave, Defendant summarizes the First Motion to Dismiss (which was previously denied) and incorporates it by reference. Doc. 907 at 3-4. Contrary to the Court's Local Rules, Defendant did not attach the motion for which he sought leave to file out of time. L.R. 15.1(a)(2). Instead, he contemporaneously filed his Second Motion to Dismiss All Indictments for Denial of His Right to Counsel of Choice (hereinafter, "Second Motion to Dismiss") without receiving leave of court to do so. Doc. 908.[8]

The Second Motion to Dismiss incorporates by reference Defendant's First Motion to Dismiss raising grand jury misconduct. Doc. 908 at 1. The Second Motion to Dismiss also alleges Defendant has been deprived of his Sixth Amendment right to choice of counsel by the

---

[7] In March 2023, Matthew Merryman entered his limited appearance as retained counsel for Defendant. Doc. 652. Shortly thereafter, Mr. Higinbotham moved to withdraw as Defendant's counsel. Doc. 662. Then, Mr. Merryman moved to withdraw as Defendant's counsel, indicating there was a conflict of interest. Doc. 669. The Court granted Mr. Merryman's motion to withdraw. Doc. 672. After holding an attorney appointment hearing, the Court denied Mr. Higinbotham's motion to withdraw. Docs. 693, 734. In May 2023, Mr. Higinbotham again asked the Court to reconsider its decision and reiterated his request to withdraw as counsel. Doc. 743. At that time, the Court granted Mr. Higinbotham's motion, granted his request to withdraw, and appointed CJA counsel Phillip Brooks. Docs. 755, 757. Mr. Brooks represented Defendant from May 12, 2023, to March 18, 2024. Docs. 757, 875, 880.

[8] On May 21, 2024, Mr. Picerno also filed a motion for Defendant's competency to be evaluated. Doc. 906. The undersigned granted the motion. Doc. 909. On July 30, 2024, the Court received a forensic evaluation report from the Metropolitan Detention Center – Los Angeles. Doc. 926. In essence, the report indicated there is no evidence to suggest Defendant is suffering from a mental disease or defect which renders him mentally incompetent. Doc. 926 at 13. The report also noted Defendant endorsed symptoms "not typically observed in mentally ill individuals" and that testing indicated "feigning or exaggerating mental health symptoms." Doc. 926 at 8-10. Upon Defendant's return to the Western District of Missouri, the undersigned conducted a competency hearing. Doc. 930. Thereafter, the undersigned issued a report recommending Defendant is competent to stand trial. Doc. 931. On September 19, 2024, the District Court adopted the report and recommendation and found Defendant is competent to stand trial. Doc. 935.

Government's alleged misconduct in dismissing an indictment that was pending in the Southern Division of this District and filing a new indictment in the Western Division of this District. Doc. 908 at 16-20.

Defendant's pending motions (Docs. 907 and 908) create confusion in that both seemingly attempt to relitigate the First Motion to Dismiss alleging grand jury misconduct that was previously denied by this Court. But the motions, and in particular the Second Motion to Dismiss (Doc. 908), also appear to raise a separate claim alleging deprivation of Defendant's right to counsel of choice. This claim was not previously raised in the First Motion to Dismiss. See Doc. 591. There is also no clear indication from the pleadings whether Defendant is seeking leave of court to file both claims, or if Defendant believes the pretrial motion deadline and Rule 12 of the Federal Rules of Criminal Procedure does not apply to the alleged "structural error" claim regarding his right to counsel of choice.[9]

For the reasons discussed below, it is recommended that Defendant's attempt to relitigate the First Motion to Dismiss based on grand jury misconduct be denied as untimely. Further, Defendant's claim alleging the deprivation of the right to counsel of choice is analyzed below, both on timeliness grounds and on substantive grounds. It is recommended that Defendant's Second Motion to Dismiss Based on Deprivation of Counsel of Choice also be denied.

## II. DISCUSSION

Defendant's Second Motion to Dismiss raises two related, but separate, legal issues: alleged grand jury misconduct, and a "structural error" in the indictment that allegedly deprived him of his Sixth Amendment right to choice of counsel. Doc. 908 at 1, 16-20.

---

[9] It should be noted, however, that the only motion referenced in Rule 12 that may be filed "at any time while the case is pending" is a motion that the court lacks jurisdiction. Fed. R. Crim. P. 12(b)(2).

A.     **Alleged Grand Jury Misconduct**

Motions to dismiss based on a defect in instituting prosecution, such as an error in grand jury proceedings or a defect in an indictment, "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)-(B). The Court may set a deadline for pretrial motions. Fed. R. Crim. P. 12(c)(1). "Courts have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases." *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009) (citation omitted). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3).

As noted above, the undersigned set an initial deadline for pretrial motions and twice extended the deadline at Defendant's request. Docs. 273, 360, 362, 411. The final extended pretrial motion deadline was set for December 15, 2021. Doc. 411. On May 21, 2024, more than two and one-half years beyond the twice extended pretrial motion deadline, Defendant filed the pending Motion for Leave (Doc. 907) and Second Motion to Dismiss (Doc. 908). Because Defendant filed his Second Motion to Dismiss raising arguments related to misconduct in grand jury proceedings after the pretrial motion deadline, his motion is untimely. Fed. R. Crim. P 12(c)(3).

However, the Court, in its discretion, may consider an untimely pretrial motion "if the party shows good cause." Fed. R. Crim. P. 12(c)(3); *see also United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019) (citation omitted). The movant bears the burden of establishing good cause, which requires a showing of "both cause and prejudice." *Fogg*, 922 F.3d at 391; *see also United States v. Mayer*, 63 F.4th 680, 683 (8th Cir. 2023) (citation omitted). Good cause is "a flexible standard that requires consideration of all interests in the particular case." Fed. R. Crim. P. 12(c)(3) advisory committee's note to 2014 amendment.

Defendant's Second Motion to Dismiss "incorporate[s] by reference" his First Motion to Dismiss filed by Mr. Higinbotham on December 10, 2022 (Doc. 591). Doc. 908 at 1 (citing Doc. 591); *see also* Doc. 907 at 3. However, as discussed above, Defendant's request to file his First Motion to Dismiss out of time was denied because Defendant failed to show good cause for the Court to allow the out-of-time filing. *See* Docs. 736 (observing Defendant did not "indicate *when* the information related to the alleged grand jury misconduct was discovered nor *why* this issue could not have been raised sooner."), 840. In the pending Motion for Leave, Defendant provides no additional information or clarification regarding the alleged grand jury misconduct, including when the information related to the grand jury misconduct was discovered or particular reasons why this issue could not have been raised sooner.

Defendant generically alleges prior counsel was "ineffective" because he failed to file these motions, and that alone provides good cause to allow the untimely filing. Doc. 907 at 5. However, retention of new counsel and the desire to file a pretrial motion "are not by themselves sufficient to establish good cause to justify relief from a waiver of a defense, objection, or request under Rule 12." *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011); *see also United States v. Dabney*, 42 F.4th 984, 989 (8th Cir. 2022) (recognizing "appointment of new counsel is not good cause for filing an untimely motion."); *United States v. Young*, No. 20-05027-01-CR-SW-MDH, 2021 WL 4786454, at *3 (W.D. Mo. Oct. 14, 2021) (citation omitted).

Further, claims of ineffective assistance of counsel are generally better left for post-conviction proceedings. *United States v. Long*, 721 F.3d 920, 926 (8th Cir. 2013) (quoting *United States v. Cook*, 356 F.3d 913, 919 (8th Cir. 2004)). Even if the Court were to consider Defendant's general allegation of ineffective assistance of counsel, Defendant does not address– much less demonstrate – prior counsel's performance was deficient, and Defendant suffered prejudice as a result. *Theus v. United States*, 611 F.3d 441, 446 (8th Cir. 2010) (citing *Strickland v. Washington*,

466 U.S. 668, 687 (1984)). Strategic and tactical decisions, including what motions to file, are within the province of defense counsel. *United States v. Askarkhodjaev*, No. 09-00143-01-CR-W-ODS, 2009 WL 10680031, at *1-2 (W.D. Mo. Sept. 16, 2009) (citations omitted). Here, there is no indication on the record that predecessor counsel was ineffective for his strategic decision to determine which pretrial motions to file.

Accordingly, the undersigned recommends the Court, consistent with its prior orders, deny Defendant's Motion for Leave to file the Second Motion to Dismiss out of time based on allegations of grand jury misconduct.

**B.    Alleged Deprivation of Right to Choice of Counsel**

In his Second Motion to Dismiss, Defendant also asserts he was deprived of his Sixth Amendment right to choice of counsel. Doc. 908 at 19-20. The Sixth Amendment's right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citation omitted). The right of counsel of choice commands the "accused be defended by the counsel he believes to be best." *Id*. at 146. Defendant's argument stems from being indicted in the Southern Division of this Court on January 16, 2019, being indicted in this matter in the Western Division of this Court on December 12, 2019, and the Government dismissing the Southern Division indictment shortly thereafter.

On January 16, 2019, Defendant was indicted in a matter filed in the Southern Division, Case No. 19-03007-01-CR-S-BP (hereinafter, "Springfield Case").[10] Springfield Doc. 6.[11] Defendant explains he hired three attorneys who he claims were ready to try the Springfield Case.

---

[10] One other defendant, Justin Ramirez, was also charged in the indictment.

[11] "Springfield Doc." refers to documents filed in Springfield Case, No. 19-03007-01-CR-S-BP.

Doc. 908 at 8, 12.[12] On December 12, 2019, Defendant was indicted in this matter in the Western Division (hereinafter, "Kansas City Case"). Doc. 1. Roughly one month later, the Springfield Case was dismissed. Springfield Doc. 71. Defendant asserts "[b]y allowing [him] to spend his money for approximately eight months on paid attorneys, before filing virtually the same allegations but with an extended list of co-defendants, the Governments' [sic] actions denied [Defendant] Elburki his constitutionally guaranteed right to counsel of choice, resulting in structural error in the indictment." Doc. 908 at 20. According to Defendant, after his indictment in the Kansas City Case, he could no longer afford to hire the attorneys who he had retained for the Springfield Case. Doc. 908 at 19.

1. **"Structural Error"**[13]

A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Shelton v. Mapes*, 821 F.3d 941, 949 (8th Cir. 2016) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Examples of structural errors include, among other things, "total deprivation of the right to counsel," "lack of an impartial trial judge," and "unlawful exclusion of grand jurors of defendant's race." *Id*. (citation omitted). The right to choice of counsel, however, "is not absolute and is circumscribed in several important respects." *United States v. Jones*, 662 F.3d 1018, 1024 (8th Cir. 2011) ("Specifically, the defendant's right to choice

---

[12] Despite Defendant's argument that his attorneys in the Springfield Case were ready to try the matter, the docket reflects his attorneys informed the Court in mid-November 2019 that they were awaiting additional discovery from the Government, and they needed additional time to review the discovery, investigate, and conduct legal research to determine whether to file pretrial motions. Springfield Doc. 62 at 1-2. As a result, Defendant's attorneys sought leave to file pretrial motions out of time. *Id*. These averments seem to contradict any notion that Springfield counsel "were ready for trial" as suggested by Defendant. *See* Doc. 908 at 8.

[13] It is unclear whether Defendant is seeking leave to file his structural error argument out of time or if he presumes he is timely asserting it. Defendant cites no authority permitting him to seek dismissal now based on grounds of which he has known for nearly five years. The undersigned observes Rule 12 does not expressly state when a motion to dismiss based on a structural error or an alleged deprivation of the right to counsel, such as Defendant's Second Motion to Dismiss here, must be filed. *See* Fed. R. Crim. P. 12(b)(2)-(3). Therefore, the undersigned analyzes the substance of Defendant's structural error argument despite the fact that Defendant has failed to raise this issue by pretrial motion for nearly five years.

of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice.") (citation and internal quotation omitted).

In support of his structural error argument, Defendant cites *Gonzalez-Lopez*, which is distinguishable from this case.[14] Doc. 908 at 20. In *Gonzalez-Lopez*, the Supreme Court found the trial court erroneously deprived the defendant of his Sixth Amendment right to choice of counsel by repeatedly denying his preferred attorney's motions for admission pro hac vice. 548 U.S. at 142-49. The trial court found the defendant's preferred attorney violated a court rule restricting the cross-examination of a witness to one attorney and communicated with the defendant while he was represented by another attorney. *Id*. at 142-43.

Here, Defendant's purportedly preferred attorneys – those who represented him in the Springfield Case – have not filed entries of appearance in this case.[15] Further, unlike *Gonzalez-Lopez*, the Court has not taken any action to thwart or deny those lawyers from representing Defendant in the instant case. The undersigned would also observe that no defense counsel (two appointed CJA lawyers and three retained lawyers) has filed a motion to transfer this matter from the Western Division of the Court to the Southern Division (Springfield) based on Defendant's right to choice of counsel. And other than the averments of Defendant, there is nothing in this record establishing why the three attorneys from the Springfield Case did not seek to enter their appearance in the Kansas City Case. Defendant does not allege – and has not demonstrated – his preferred attorneys have been legally prohibited from representing him in this matter. As such, Defendant

---

[14] Defendant also cites *Fulminante*. Doc. 908 at 20. While *Fulminante* identifies total deprivation of the right to counsel as a structural error for which the harmless error rule does not apply, *Fulminante* did not involve a total deprivation of right to counsel. 449 U.S. at 309-10. Instead, the Supreme Court focused on whether the harmless error rule applied to an erroneously admitted coerced confession. *Id*. at 282-96.

[15] Unlike the attorney in *Gonzalez-Lopez*, two of the Springfield Case attorneys would not have to file a motion to appear pro hac vice in this matter because they are currently admitted to appear and practice in the Western District of Missouri.

does not establish a total deprivation of his right to counsel of his choice and no structural error has occurred.

Defendant contends he was deprived of being represented by the Springfield Case attorneys in the Kansas City Case because he could no longer afford them. Doc. 908 at 19. However, the undersigned would observe Defendant has subsequently retained three private attorneys at different times in the Kansas City Case. Docs. 131 (entry of appearance by private counsel Lacon Smith), 652 (limited entry of appearance by private counsel Matthew Merryman), 875 (entry of appearance of private counsel John Picerno). Defendant is currently represented by a private attorney he chose and retained. Doc. 875.[16] Thus, contrary to Defendant's allegation, he has been able to retain counsel of his own choosing to represent him in this matter.[17] Accordingly, the undersigned recommends the Court find there is no structural error and deny Defendant's Second Motion to Dismiss on the basis of structural error.

### 2. Alleged Prosecutorial Misconduct

Defendant also alleges the "actions of the Prosecutors" – i.e., bringing charges against him in Springfield, then bringing nearly identical charges in Kansas City, and later dismissing the Springfield Case – "reduced [him] from being a defendant that could pay for his own counsel, to a defendant that could not pay for his own counsel." Doc. 908 at 19. He asserts if the Court were to find "the [Springfield Case] is the same as [the Kansas City Case], then the Government's dismissal of the [Springfield Case] . . . was NOT in good faith." *Id*. at 12-13, 18. Although not expressly

---

[16] In two recent pro se filings, Defendant represented his current attorney was paid a $30,000 retainer. Doc. 928 at 2; Doc. 938 at 2. But Defendant provides no explanation as to why he cannot retain the Springfield Case attorneys.

[17] To the extent Defendant maintains, as he did at his arraignment hearing, he could no longer afford the Springfield Case attorneys because they wanted additional funds to travel, the undersigned finds this argument unpersuasive. *See* Doc. 27. The undersigned notes Lacon Smith, the first attorney Defendant retained in this matter, has her primary office in Springfield, Missouri. *See* Doc. 131. Further, Daniel Allen, one of the Springfield Case attorneys, works in Liberty, Missouri – a suburb of Kansas City. *See* Springfield Doc. 25. Thus, Mr. Allen's travel cost would be greatly reduced if he were to represent Defendant in the Kansas City Case.

alleged in his Second Motion to Dismiss, Defendant's deprivation of counsel argument seems to assert prosecutorial misconduct. *See* Doc. 908 at 12-16, 18-20. A motion to dismiss based on a defect in instituting the prosecution of a case, such as vindictive prosecution, must be raised in a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(A)(iv). As noted *supra*, section II(A), the Court set a deadline for pretrial motion. Here, Defendant did not meet the Court's deadline for filing pretrial motions. Thus, the undersigned recommends the Court deny the motion as untimely. However, the Court, in its discretion, may consider an untimely pretrial motion "if the party shows good cause." Fed. R. Crim. P. 12(c)(3); *see also Fogg*, 922 F.3d at 391 (citation omitted).

      **(a)**    **Cause**

Defendant attempts to argue the basis of his Second Motion to Dismiss was recently discovered. Defendant contends the arguments presented in his Second Motion to Dismiss were "discovered" once Mr. Picerno, his most recently retained counsel since March 2024, "began a review of all the Government's discovery." Doc. 907 at 5.[18] During his review, Mr. Picerno "discovered . . . arguments that should have been made on behalf of Mr. Elburki were not made, and as a result he was denied effective assistance of counsel." *Id*. (citation omitted).

But, in his Second Motion to Dismiss, Defendant also represents "the fact that the allegations against Mr. Elburki in [the] Springfield Case were virtually the same as the allegations in the Kansas City Case, did not become apparent until after Mr. Elburki's discovery was reviewed by his appointed counsel (Chase Higginbotham [sic]) in the Kansas City Case." *Id*. at 19. Mr.

---

[18] As discussed above, to the extent Defendant is claiming recent retention of new counsel constitutes "good cause" or that predecessor counsel was ineffective for not raising this issue, the "retention of new counsel [is] not by [itself] sufficient to establish good cause." *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011); *see also United States v. Dabney*, 42 F.4th 984, 989 (8th Cir. 2022). Further, there is no evidence before the Court that predecessor counsel's strategic decision regarding whether to file certain motions was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984).

Higinbotham represented Defendant from December 2019 to August 2020 and again between June 2021 and May 2023.  Docs. 31, 132, 360-61, 757.

Defendant also represents – in the same motion – that the issue was raised during his January 2, 2020 arraignment, and he has "consistently" maintained throughout this matter that the Springfield Case and this matter are the same case.  Doc. 908 at 2-3, 7; Doc. 61 at 13-14.  At his arraignment, Defendant complained he was "re-indicted for the same charges."  Doc. 61 at 27; *see also* Doc. 61 at 31 ("It is the same Indictment.").  He also expressed that with the matter filed in the Kansas City Case, he would "lose all the counsel" his "family and friends have struggled for money to pay for."  *Id*. at 27.  And if he were to keep the Springfield Case attorneys, two would "want additional funds to travel" to Kansas City.  *Id*.  At the time of that hearing, no discovery had been exchanged.  *Id*. at 7-8.

To summarize Defendant's positions, the "discovery" of the Government's refiling of nearly identical charges against him in separate Divisions in this Court occurred (1) on or before January 2, 2020, (2) between December 2019 and August 2020, (3) between June 2021 and May 2023, and (4) after March 2024.  Defendant's varying representations belie any notion that the basis of his Second Motion to Dismiss was only recently discovered.  The record, including but not limited to Defendant's comments during his arraignment, further undercuts Defendant's contention that the information was only recently discovered.

Moreover, Defendant's Motion for Leave provides no reason as to why the arguments raised in his Second Motion to Dismiss could not have been raised before May 21, 2024.  *See United States v. Salgado-Campos*, 442 F.3d 684, 686 (8th Cir. 2006) (affirming the trial court's denial of motion for extension of time to file pretrial motions because it was filed three months after the pretrial motion deadline, nearly two months after newly retained counsel entered the case, and only three weeks before the trial was set to commence).  The undersigned would also observe the pending

motions were filed less than one month before the last trial setting of June 3, 2024. And the June 2024 trial setting was delayed due to Defendant seeking a motion for a competency evaluation. Doc. 906.

After reviewing Defendant's pending motions, the applicable rules, and case law, the undersigned recommends the Court find Defendant has failed to show cause for the Court's consideration of his untimely motion to dismiss based on prosecutorial misconduct and/or vindictive prosecution.

### (b) Prejudice

Even if the Court were to find Defendant established cause, the undersigned still recommends the Court deny consideration of the untimely motion raising prosecutorial misconduct because Defendant failed to demonstrate prejudice. Contrary to Defendant's belief, the Kansas City Case is different from the Springfield Case. *See* Doc. 1; Springfield Doc. 6. The Kansas City Case indictment charged Defendant with additional offenses and brought charges against multiple codefendants not included in the Springfield Case. *Id*. Moreover, Defendant does not demonstrate the Government did anything more than exercise its broad discretion in dismissing the Springfield Case and charging him in the Kansas City Case with additional offenses and codefendants. *See United States v. Campbell*, 410 F.3d 456, 462 (holding no misconduct or vindictiveness exists when a prosecutor revises a charge based on "newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights").

Prosecutors have broad discretion to enforce criminal laws. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). There is a "presumption of regularity" that supports prosecutorial decisions. *Id*. at 464. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Id.* (citation

omitted). Here, nothing on the record before the Court suggests the prosecution acted in bad faith or sought the Indictment in this case as a way to deprive Defendant of counsel of his own choice. *See also United States v. Broussard*, Crim. No. 19-101 (SRN/ECW), 2024 WL 3362966 at *8 (D. Minn. July, 9, 2024) (finding no prosecutorial misconduct where a federal prosecutor chose to bring charges against Defendant in the District of Minnesota after he declined to resolve the charges in the Middle District of Pennsylvania and those charges were later dismissed).

Further, Defendant fails to allege or demonstrate prejudice from the alleged prosecutorial misconduct. *See* Docs. 907, 908. Defendant merely contends that when the Springfield Case was dismissed and he was indicted in the present matter he could "no longer afford to hire" the three attorneys he hired in the Springfield Case, which left him to rely on Court appointed counsel. Doc. 908 at 8, 12, 19. As previously stated, *see supra*, section II(B)(1), while Defendant has not been represented in this matter by his Springfield Case attorneys, he has retained three different attorneys in this matter and is currently represented by retained counsel. Docs. 131, 652, 875. Defendant provides no other argument as to how he has been prejudiced by the Government's decision to dismiss the Springfield Case and indict him in the Kansas City Case. For these reasons, the undersigned recommends the Court find Defendant fails to show prejudice and deny Defendant's Motion for Leave to file his Second Motion to Dismiss as it pertains to allegations of prosecutorial misconduct.

### III. CONCLUSION

Based on the foregoing, it is RECOMMENDED that the Court, after making an independent review of the records and applicable law, enter an order **DENYING** Defendant's Motion for Leave of Court to File Out of Time, His Second Motion Under Rule 12 of the Federal Rules of Criminal Procedure, Motion to Dismiss to Dismiss [sic] All Indictments (Doc. 907). Additionally, the

15

Case 4:19-cr-00406-RK    Document 940    Filed 10/10/24    Page 15 of 16

undersigned also recommends the Court enter an order **DENYING** Defendant's Second Motion to Dismiss All Indictments for Denial of His Right to Counsel of Choice (Doc. 908).

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

**IT IS SO ORDERED.**

DATE: October 10, 2024  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE